UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SANTOS MARROQUIN, CIVIL NO. 01-1659 (RHK/JMM)

Plaintiffs,

v. ORDER

SWIFT & COMPANY,

Defendant and
Third Party Plaintiff,

NATIONAL SERVICE COMPANY OF IOWA, INC. AND PACKERS SANITATION SERVICES, INC.

Third Party Defendants.

The above matter came on for hearing before the undersigned on April 16, 2002 upon National Service Company's Motion for Leave to File Fourth Party Complaint [Docket No. 14], Swift & Company's Motion to Amend its Answer [Docket No. 16], Packer Sanitation's Motion to Amend its Answer [Docket No. 19], and Santos Marroquin's Motion to Amend Complaint to Add Claim for Punitive Damages [Docket No. 21]. Mark E. Salter, Esq. appeared on behalf of Plaintiff; Dale Wagner, Esq. appeared on behalf of Defendant Swift & Company ("Swift"), Bradley D. Fisher, Esq. appeared on behalf of National Service Company of Iowa, Inc. ("National") and Patrick Drescher, Esq. appeared on behalf of Packer Sanitation Services, Inc. ("Packer").

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

MAY 09 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

IT IS HEREBY ORDERED that:

1. Defendant National's Motion for Leave to Serve 4th Party Complaint [Docket No. 14], Defendant Swift's Motion to Amend its Answer [Docket No. 16], Defendant Packer's Motion to Amend its Answer [Docket No. 19] are granted.

2. Plaintiff's Motion for Leave to Amend his Complaint [Docket No. 21] is denied without prejudice.

Dated: May 9, 2002

JOHN M. MASON
United States Magistrate Judge

**MEMORANDUM**

## I. Background

Plaintiff alleges that he "was seriously and permanently injured when his legs were amputated while sanitizing a hash gut grinder" at Swift & Company. Under Minnesota law, a Plaintiff may not seek punitive damages in the initial Complaint, but rather must make a Motion to Amend the Complaint, and obtain permission of the Court. Plaintiff now seeks leave to amend his Complaint to add a claim for punitive damages against Swift. The Pretrial Scheduling Order fixed April 1, 2002 as the time for Motions to Amend the Complaint, and did not specify a separate date for Motions to Amend seeking punitive damages, so Plaintiff presented this Motion prior to the time that it had acquired evidence sufficient to support the amendment. Although we conclude that the Motion should be denied, this is without prejudice to the right of Plaintiff to renew the Motion. We have amended the Pretrial Scheduling Order to specify the deadline.

## II. General Standards for an Award of Punitive Damages

The process to be followed in seeking punitive damages is set forth in Minn. Stat. § 549.191. That section provides:

> Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.

Minn. Stat. § 549.191.

The substantive requirements for the recovery of punitive damages are specified in Minn. Stat. § 549.20, which provides: "Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a). Section 549.20 defines the acts which constitute "deliberate disregard for the rights or safety of others:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b).

In situations involving a principal and agent, the statute provides:

> Punitive damages can properly be awarded against a master or principal because of an act done by an agent only if:
>
> (a) the principal authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit, or
> (c) the agent was employed in a managerial capacity with authority to establish policy and make planning level decisions for the principal and was acting in the scope of that employment, or
> (d) the principal or a managerial agent of the principal, described in clause (c), ratified or approved the act while knowing of its character and probable consequences.

Minn. Stat. § 549.20, subd. 2 (1997).

The application of these principles has been considered in numerous cases, which are collected in Olson v. Snap Products, Inc., 29 F. Supp.2d 1027 (D. Minn. 1998), and need not be repeated here.

We have carefully reviewed the arguments of the parties, and conclude that Plaintiff has not satisfied his burden of providing evidence which substantiates his entitlement to assert a claim for punitive damages against Swift.

## III. Merits of Plaintiff's Motion

Plaintiff relies primarily upon notes, redacted reports and unsworn statements purporting to show OSHA violations to support his Motion. Courts, however, review evidence submitted "in support of a Motion to Amend as the Court would review a Motion for a Directed Verdict" under Rule 50(a) of the Federal Rules of Civil Procedure. See Ulrich v. City of Crosby, 848 F. Supp. 861, 867 (D. Minn.1994),(citing Swanlund

v. Shimano Indus. Corp., Ltd., 459 N.W.2d 151, 154 (Minn. Ct. App. 1990), rev. denied (Oct. 5, 1990)). Thus, much of the evidence submitted by Plaintiff would not be admissible at trial, and we do not give such evidence significant weight when considering Plaintiff's Motion. For example, Plaintiff submitted Employee Interview Statements from undisclosed employees taken during a Minnesota Department of Labor and Industry, Occupational Safety and Health Division ("OSHA") investigation. (Exh. A and B) Plaintiff also submitted an excerpt of the report and field notes from the OSHA investigation. (Exh. C) The report contains a brief description of the purported hazard that provides as follows:

> Swift mechanics lock out Weiler hash gut grinder, then disassemble it in preparation for sanitation. After disassembly, they remove their locks, and leave to continue on to next piece of equipment. Swift mechanics do not stay to assure that sanitation workers apply their locks prior to beginning the sanitation process on the Weiler hash gut grinder.

The report also contains statements regarding purported evidence to support a basis for alleged violations of OSHA standards. Generally, those statements indicate that although there was a written procedure that required "continuity of lockout or tag-out protection," there was no "orderly transfer of lockout or tag-out device protection between off-going Swift mechanics, and on-coming [National] workers." The report continues stating "[c]learly, both Swift . . . and [National] share this responsibility since each employer has exposed employees." Evidence of this nature is insufficient to sustain Plaintiff's burden, however, because it does not show a deliberate disregard for his rights and safety.

Plaintiff submitted other Employee Interview Statements from undisclosed employees. (Exh. D and E) One such statement indicates that when the employee walked into a power room, he discovered that the power switch to the grinder at issue was in the

on position at the time of the accident. (Exh. D) The other statement contains the following relevant question and answer: Question: "Have you ever seen Santos cleaning equipment that was not locked out?" Answer: "No, to the best of my knowledge. The hash gut grinder is torn down, and the auger and blades are removed, so the machine is not locked out then." These statements do not provide the type of clear and convincing evidence required to support a motion to amend.

Plaintiff further submitted a document entitled Swift & Companies Lockout/Tag-out Program that provides, in relevant part, as follows:

> 1. Identify Energy Source(s)/Notify Effected employees.
> 2. Shut down Equipment - shut switch to the off position.
> 3. Operate breaker #52 in South Chitt/Panel electrical room.
> 4. Lockout and tag-out equipment at breaker #52.
> 5. Relieve store energy. Make sure equipment has stopped moving, relieve trapped pressure, block parts that can fall as needed.
> 6. Verify Lockout by activating control switch. Return controls to off position.

("Exh. F") This evidence shows that Swift had a lockout/tag-out procedure. But Plaintiff has not presented sufficient evidence to allow this Court to find that Swift violated its procedure, and that the violation was a cause of the injury.

Plaintiff also submitted another Employee Statement from an undisclosed employee that contains the following question and answer colloquy:

> Question: "If Swift mechanics see lockout/tag-out violations, what actions do they take?" Answer: "They should notify me. I would assess what they were doing, talk to the guy directly, get the supervisor in the area involved, and their safety director if it was an [National] person. If it was my person, I would handle it right there, and get Tammy involved."

In addition, Plaintiff submitted a Minnesota Department of Labor and Industries Inspection Narrative that discusses ownership and future guarding devices that were planned for the piece of equipment at issue. (Exh. H) Plaintiff also presented the Cover Page for the User's Manual for the grinder, a page from the manual entitled "Typical Hopper Guard Dimensions" and purported OSHA field notes. (Exh. J) While such evidence provides a partial backdrop regarding the context in which Swift's lockout/tag-out procedure was to operate in, it does not show that a violation of the procedure actually occurred and that such a violation constituted a deliberate disregard for Plaintiff's rights and safety.

Plaintiff also submitted an excerpt from an OSHA Employee Statement that provides, in relevant part, the following question and answer colloquy:

> Question: Have you ever observed [National] workers actually locking out equipment?"
> Answer: "Yes, I have seen them lock equipment out on the Cut floor. * * * I noticed that the machine switch was on "Auto." Bart Collin ran out of the electrical control and said that "Everything had been On", but he took the hash gut grinder out of service.

Like much of the other evidence Plaintiff submitted, this evidence sheds some light on the relevancy of Swift's procedure, but it does not show a deliberate disregard for Plaintiff's rights and safety.

Finally, Plaintiff submitted a copy of a letter dated April 9, 2002 from Wendell Rust, President of Universal Safety Associates, Inc. to Plaintiff's counsel. (Second Salter Affidavit at Exh. A) The letter discusses preliminary impressions Mr. Rust developed regarding this case. The letter, however, is not sworn testimony that the court can rely on

when considering Plaintiff's Motion. Moreover, even if the letter were in the form of an affidavit it would be insufficient to support Plaintiff's motion because it expressly states that Mr. Rust has "not come to any finite opinions as of yet . . ." The letter continues stating "in reviewing present available information, there appears to be certain likelihood of events starting to become evident." Preliminary opinions such as these are insufficient to make a prima facie showing of clear and convincing evidence that Swift acted with a deliberate disregard for Plaintiff's rights and safety.

In addition, the cases and statutes that Plaintiff cites in support of his claim, at best, stand for the proposition that violations of OSHA's specific duty clause constitute negligence per se. See, e.g., Zorgdrager v. State Wide Sales, Inc., 489 N.W.2d 281, 284 (Minn. Ct. App. 1992) (violation of OSHA standard constitutes negligence per se). To prevail on a motion to amend to seek punitive damages, however, the moving party must present clear and convincing evidence of deliberate disregard of his or her rights. Minn. Stat. § 549.20, subd. 1(a). Evidence of negligence or even gross negligence does not itself warrant a claim for punitive damages. Ulrich v. City of Crosby, 848 F. Supp. 861, 868 (D. Minn.1994).

J.M.M.